UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>COMDISCO VENTURES, INC.,<br>et al.,<br><br>    Debtors.<br><br>COMDISCO VENTURES, INC.<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br>VIGILANT INSURANCE COMPANY,<br>ABD INSURANCE AND FINANCIAL<br>SERVICES, HAMPSON MOWRER<br>KREITZ AGENCY, INC., SUMMIT<br>GLOBAL PARTNERS OF TEXAS, INC.,<br>CRIST ELLIOT MACHETTE INSURANCE<br>SERVICES, and ACCORDIA OF<br>CALIFORNIA INSURANCE SERVICES,<br>INC.,<br><br>    Defendants. | No. 04 C 2007<br>No. 04 C 2393<br>Judge Joan H. Lefkow<br><br>Bankruptcy No. 01-24795<br>Adv. No. 04A00285 |

## MEMORANDUM OPINION AND ORDER

On February 18, 2004, plaintiff, Comdisco Ventures, Inc. ("Comdisco"), filed a fifteen-count Adversary Complaint in United States Bankruptcy Court for the Northern District of Illinois (case number 04-A-00285) against defendants, Federal Insurance Company ("Federal"), Vigilant Insurance Company ("Vigilant") (together, the "Chubb defendants"), ABD Insurance and Financial Services ("ABD"), Hampson Mowrer Kreitz Agency, Inc. ("HMK"), Summit Global Partners of Texas, Inc. ("Summit"), Crist Elliot Machette Insurance Services ("Crist"),

and Accordia of California Insurance Services, Inc. ("Accordia") (together, the "broker defendants"). Counts I and II allege breach of contract and breach of the implied covenant of good faith and fair dealing against the Chubb defendants. The remaining counts allege professional negligence against Crist (Count XII) and professional negligence, negligent misrepresentation, and intentional misrepresentation against each of the other broker defendants. Subsequently, two defendants in case number 04-A-00285 filed motions to withdraw the reference to bankruptcy court, and their motions were assigned to this court as case numbers 04-C-2007 and 04-C-2393. On June 18, 2004, this court granted the motions to withdraw the reference. Before the court are the following motions: the Chubb defendants' Motion to Dismiss Count II (breach of the implied covenant of good faith and fair dealing)[1]; ABD's Motion to Dismiss or, in the alternative, for a more particularized statement of plaintiff's fraud claims; HMK's Motion to Dismiss Counts VII (negligent misrepresentation) and VIII (intentional misrepresentation); Summit's Motion to Dismiss; Crist's Motion to Dismiss Count XII (professional negligence)[2]; and Accordia's Motion to Dismiss. For the reasons stated below, the court denies all of the motions.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that

---

[1] The Chubb Group defendants also join the motion to dismiss filed by ABD.

[2] Crist also joins the motions to dismiss filed by ABD, Summit, and Accordia.

would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).

In addition to the mandates of Rule 12(b)(6), Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.").

## THE PARTIES

Comdisco Ventures, Inc. is a Delaware Corporation with its principal place of business in Rosemont, Illinois. On July 16, 2001, Comdisco, Inc. filed a Voluntary Bankruptcy petition in the United States Bankruptcy Court of the Northern District of Illinois (the "Bankruptcy Court") for reorganization relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On July 30, 2002, the Bankruptcy Court entered an order confirming the First Amended and Joint Plan of Reorganization of Comdisco, Inc. and its Affiliate Debtors in Possession dated June 13, 2002. The Reorganization Plan became effective on August 12, 2002. Comdisco, Inc. continues

to operate its business and manage its properties as a reorganized debtor pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code. Comdisco Ventures, Inc. is a wholly owned subsidiary of Comdisco, Inc. formed pursuant to the Reorganization Plan. Comdisco Ventures, Inc. holds all of the assets constituting the former Venture Finance Division of Comdisco, Inc. For purposes of the pending motions, the parties treat Comdisco Ventures, Inc. as synonymous with the debtor, Comdisco, Inc., and the court does as well, referring to them collectively as Comdisco.

Federal is a stock insurance company incorporated in the state of Indiana with its principal place of business in Warren, New Jersey. At all relevant times, Federal was duly authorized and licensed to write and issue insurance policies in the state of Illinois.

Vigilant is a stock insurance company incorporated in the state of New York with its principal place of business in Warren, New Jersey. At all relevant times, Vigilant was duly authorized and licensed to write and issue insurance policies in the state of Illinois.

ABD is an insurance brokerage service incorporated in the state of California with its principal place of business in Redwood City, California. At all relevant times, ABD was duly licensed to broker insurance policies in the state of Illinois.

HMK is an insurance brokerage service incorporated in the state of Pennsylvania with its principal place of business in Bethlehem, Pennsylvania. At all relevant times, HMK was duly licensed to broker insurance policies in the state of Illinois.

Summit is an insurance brokerage service incorporated in the state of Texas with its principal place of business in Dallas, Texas. At all relevant times, Summit was duly licensed to broker insurance policies in the state of Illinois.

Crist is an insurance brokerage service incorporated in the state of California with its principal place of business in Oakland, California. At all relevant times, Crist was duly licensed to broker insurance policies in the state of Illinois.

Accordia is an insurance brokerage service incorporated in the state of California with its principal place of business in San Francisco, California. At all relevant times, Accordia was duly licensed to broker insurance policies in the state of Illinois.

## BACKGROUND

At all relevant times, Comdisco was in the business of leasing computer equipment, office furniture, and other office equipment to various venture capital backed "dot.com" companies. According to Comdisco, it entered into separate Master Lease Agreements ("MLAs") with numerous lessees to lease computer and other office equipment. Pursuant to the MLAs, Comdisco retained title and ownership of the equipment and each lessee was responsible for obtaining insurance for such equipment and adding Comdisco as an additional insured and loss payee under the policies. Comdisco claims that the lessees instructed and authorized the broker defendants to procure the required insurance policies and to have Comdisco named as an additional insured and loss payee under the policies. The Chubb defendants issued insurance policies allegedly covering Comdisco's equipment to the following lessees:

iBeam Broadcasting, Inc. ("iBeam") (Federal policy number 3538-43-88, covering property located at premises in Arizona, California, Oklahoma, Virginia, and any other location);

Altium, Inc. ("Altium") (Federal policy number 3535-92-62, covering property located at premises in California);

Aristasoft Corporation ("Aristasoft") (Vigilant policy number 3539-08-18, covering property located at premises in California, Massachusetts, and India);

5

eCoverage, Inc. ("eCoverage") (Federal policy number 3538-17-73, covering property at premises in California and "any other location");

Naxon Corporation ("Naxon") (Federal policy number 3539-94-81, covering property located at premises in California and Michigan);

Christianity.com, Inc. ("Christianity") (Federal policy number 3576-00-83, covering property located ay premises in California and Missouri);

New Access Communication a/k/a Centerpoint Broadband ("Centerpoint") (Federal policy number 3538-59-75, covering property at premises located in California, Florida, and the United Kingdom);

Quixi, Inc. ("Quixi") (Federal policy number 3537-33-59, covering property at premises located in California, New York, and Texas);

eLaw, Inc. ("eLaw") (Federal policy number 3575-41-06, covering property at premises located in Texas and "any other location");

Vectris Communications a/k/a Vectris Financing, Inc. ("Vectris") (Federal policy number 3537-35-98, covering property at premises located in Texas and "any other location"); and

Voter.com, Inc. ("voter") (Federal policy number 3575-49-57, covering property located at premises in California, the District of Columbia, and Massachusetts).

Comdisco alleges that the broker defendants issued Certificates of Insurance or Evidence of Insurance to Comdisco, representing to Comdisco that it had been added as an additional insured and/or loss payee under policies issued by the Chubb defendants.

Subsequently, all of the lessees went out of business and the leased equipment disappeared. Comdisco alleges that it sustained $12,117,100.53 in equipment-related losses during the effective dates of those policies. Comdisco alleges that it notified the Chubb defendants of the losses and that the Chubb defendants have denied coverage on the grounds that Comdisco is not named as an additional insured or loss payee under the policies.

## DISCUSSION

### I. Chubb Defendants - Preemption

The Chubb defendants contend that Comdisco's claim for breach of the covenant of good faith and fair dealing (Count II) should be dismissed because that cause of action is preempted by Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. Comdisco argues that its claim is not preempted because Illinois law does not apply to claims against the Chubb defendants. Comdisco instead contends that each insurance policy is governed by the law of the state in which the insured equipment was located.

Federal courts sitting in diversity must look to the choice-of-law rules of the forum state for applicable law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Seventh Circuit has not yet ruled on whether this rule applies in the bankruptcy context. However, those courts that have considered the issue have held that it does. *Master Mortgage Inv. Fund, Inc. v. Am. Nat. Fire Ins. Co.*, 151 B.R. 513, 518 (W.D. Mo. 1993); *In re Merit Dredging Co., Inc.*, 839 F.2d 203, 205-06 (4th Cir. 1988). The forum state in this case is Illinois; thus, the court applies Illinois' conflict-of-law rules. Under Illinois law conflict-of-law rules, when an insurance policy lacks a choice of law provision, Illinois courts employ a "most significant contacts" test to determine the governing law for the contract. *Jupiter Aluminum Corp. v. Home Ins. Co. et al.*, 225 F.3d 868, 873 (7th Cir. 2000). Under this test, "insurance policy provisions are generally governed by: the location of the subject matter, the place of delivery of the contract, the domicile of the insured or insurer, the place of the last act giving rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Lapham-Hickey Steel Corp., v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995) (quotation marks

7

and citation omitted). "While all of these factors must be considered in the choice-of-law analysis, the location of the insured risk is given special emphasis." *Society of Mount Carmel v. Ben Franklin Ins. Co. of Ill.*, 643 N.E.2d 1280, 1287 (Ill. App. 1st Dist. 1994) (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 193 (1971)). However, the location of the insured risk "is entitled to little weight when the subject matter or risk is located in more than one state." *Employers Ins. of Wasau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 694 (1999)(citing RESTATEMENT § 193). In addition, some Illinois courts have given special emphasis to the state where the policy was issued or delivered or the place of the last act giving rise to a valid contract. *See, e.g., United States Fire Insurance Co. v. CNA Insurance Cos.*, 572 N.E.2d 1124 (Ill. App. 1st Dist. 1991); *Jadczak v. Modern Service Insurance Co.*, 503 N.E.2d 794 (Ill. App. 1st Dist. 1987). The last act giving rise to an insurance contract usually occurs in "the state where the policy is delivered and the premiums are paid." *Emerson Elec. Co. v. Aetna Casualty & Surety Co.*, 743 N.E.2d 629, 641 (Ill. App. 1st Dist. 2001).

Because all of the policies except one (Altium) insure property located in more than one state, and because all of the policies provide varying degrees of coverage for property in transit, property at unscheduled locations, property at "any other location," and property in an "exhibition, fair or trade show," the location of the insured risk is entitled to little weight. The places where the policies were issued and delivered, however, is entitled to significant weight. The policies issued to iBeam, Altium, Aristasoft, eCoverage, Naxon, Christiantiy, and Centerpoint were all prepared by insurance brokers based in California and purchased by and

8

delivered to[3] companies located in California. These policies' contacts with California, given the weight assigned them under Illinois law, are more significant than their contacts with any other state. Thus, California law governs these policies. Likewise, the policies issued to eLaw and Vectris were prepared by insurance brokers in Texas and purchased by and delivered to companies located in Texas. Thus, Texas law governs these policies. The policy issued to Voter was prepared by an insurance broker based in Massachusetts and purchased by and delivered to a company located in Massachusetts. Thus, Massachusetts law governs this policy. Finally, the policy issued to Quixi was prepared by an insurance broker based in Pennsylvania and purchased by and delivered to a company located in New York. Because the last act giving rise to the contract – the delivery of the policy – occurred in New York, New York law governs the policy.

Because Illinois law does not govern any of the policies at issue in this case[4], the Chubb defendants' motion to dismiss is denied.

## II. Broker Defendants - Choice of Law

As in contract cases, Illinois courts employ a most significant contacts test to determine the governing law for tort claims. *Jones v. State Farm Mutual Auto. Ins. Co.*, 682 N.E.2d 238, 249 (Ill. App. 1st Dist. 1997). With respect to fraud and misrepresentation claims, Illinois courts follow the Restatement (Second) of Conflict of Law in looking to the following six factors to determine which state has the most significant relationship to the action: (a) the place, or places,

---

[3] The court looks to the mailing address of the primary insured identified on the policy itself for the state where the policy was delivered.

[4] The court notes that neither of the other Judges who have issued rulings on motions to dismiss in this family of cases have found that Illinois law governs any of the policies at issue. *See Comdisco, Inc. v. Lumbermens Mutual Casualty Co. et al.*, 04 C 3605, 04 C 3791 (March 24, 2005) (Darrah, J.); *Comdisco, Inc. v. Atlantic Mutual Ins. Co.*, 04 C 3573 (April 20, 2005) (Lindberg, J.).

9

where the plaintiff acted in reliance upon the defendant's representations; (b) the place where plaintiff received the representations; (c) the place where the defendant made the representations; (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract he has been induced to enter by the false representations of the defendant. *Telular Corp. v. Mentor Graphics Corp.*, 282 F. Supp. 2d 869, 873 (N.D. Ill. 2003); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148.

The alleged misrepresentations in this case were made in the various states (California, Pennsylvania, Texas) where the broker defendants prepared and issued the Certificates of Insurance. Comdisco received these Certificates and acted in reliance upon them in Illinois. Comdisco is a Delaware corporation with its principal place of business in Illinois. The broker defendants are incorporated under the laws of California (Accordia, Crist, ABD), Pennsylvania (HMK), and Texas (Summit) and each has its principal places of business in its state of incorporation. As explained above, the insured property–the "tangible thing which is the subject of the transaction between the parties"–was located in more than one state. Thus, the location of the insured property is entitled to little weight. The last factor is inapplicable here.

The comments to section 148 of the Restatement provide some assistance in assigning weight to these various factors. The state where Comdisco received the representations (Illinois) is as important a contact as the state where broker defendants made them (California, Pennsylvania, Texas), but neither is as important a contact as the place where Comdisco acted in reliance (Illinois). *See Telular*, 282 F. Supp. 2d at 873 (citing RESTATEMENT § 148, cmt g).

Further, plaintiff's principal place of business (Illinois) is a contact "of substantial significance" when the loss is pecuniary in nature, more so than the place of incorporation (Delaware). *See Id.* (*citing* RESTATMENT § 148, cmt i). These status contacts of Comdisco are more important than similar contacts of broker defendants (California, Pennsylvania, Texas). *Id.* Examining the factors of section 148 and assigning them the respective weights suggested by the comments leads to the conclusion that Illinois is the state with the most significant relationship to Comdisco's claims against the broker defendants.

### III. Broker Defendants - Statute of Limitations Defense

Accordia, Summit and Crist move to dismiss Comdisco's claims against them, arguing that those claims are barred by Illinois' two-year statute of limitations on claims concerning the failure to procure insurance. Under Illinois law, "[a]ll causes of action against insurance producers, limited insurance representatives, and registered firms concerning the . . . failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4. Comdisco alleges in its Complaint that the loss of its equipment occurred during the "effective dates" of the relevant policies, which, under each of the policies at issue, concluded over two years before Comdisco filed its Complaint on February 18, 2004. Thus, Accordia, Summit and Crist argue that Comdisco's claims are time-barred.

Ordinarily, affirmative defenses such as statute of limitations are not grounds for dismissal under Rule 12(b)(6), Fed. R. Civ. P. *See U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Dismissal may be appropriate, however, where "the existence of a valid affirmative defense is so obvious from the face of the complaint that the suit can be regarded as frivolous." *Walton Risk Services, Inc. v. Clarendon America Ins. Co.*, 2005 WL

78951, at *4 (N.D. Ill Jan. 12, 2005) (citing *Walker* v. *Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002)).

The existence of a defense based on Illinois' two-year statute of limitations is not obvious from the face of Comdisco's Complaint. Under Illinois law, a cause of action for most torts accrues when the plaintiff suffers injury. *West American Ins. Co.* v. *Sal E. Lobianco & Son Co.*, 370 N.E.2d 804, 807 (1977). Literal application of the statute of limitations, however, sometimes produced such harsh results that Illinois courts developed the "discovery rule." The discovery rule "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc.* v. *Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (1994). Applying that rule here, Comdisco's causes of action did not accrue when Comdisco lost its property but rather when the Chubb defendants denied Comdisco's claims under the relevant policies. *See, e.g., Broadnax* v. *Morrow*, 762 N.E.2d 1152, 1157 (Ill. App. 4th Dist. 2002) (holding that an insurance policyholder's negligence claim against his insurance agents accrued when insurance company denied policyholder's claim). These dates do not appear in Comdisco's Complaint.

Accordia argues that the court should not allow Comdisco "to defeat dismissal by intentionally omitting dates in the allegation." (Accordia's Reply, at 12.) This argument is meritless. "A complaint is not required to allege all, or any, of the facts logically entailed by the claim. . . . [A] complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses Ass'n* v. *State of*

*Illinois,* 783 F.2d 716, 727 (7th Cir. 1986). Comdisco's Complaint does not establish on its face that the claims are time-barred. Thus, the motions to dismiss on this ground are denied.

## IV. Broker Defendants - Rule 8(a)

ABD, Accordia, and Crist each argue that Comdisco's Complaint should be dismissed for failure to allege sufficient facts to satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. First, ABD and Crist argue that Comdisco must allege specific facts showing that its losses were covered under the relevant policies. While such facts may be required in a fact-pleading jurisdiction, Rule 8(a) of the Federal Rules of Civil Procedure requires no such detail. Comdisco clearly alleges ABD and Crist issued Certificates of Insurance to Comdisco representing that Comdisco was a named insured and loss payee under the relevant policies, that it sustained losses covered by the policies, and that the Chubb defendants have denied Comdisco's requests for indemnification of the losses on the grounds that Comdisco is not an additional insured or loss payee under the policies. This is all that Rule 8 (a) requires. ABD and Crist have sufficient notice of the substance of the allegations against them.

Similarly, Accordia argues that Comdisco must allege specific facts demonstrating how Comdisco derives its specific damage amounts and the dates of any alleged injury. Again, Comdisco's Complaint satisfies the requirements of Rule 8(a). It alleges specific damages and alleges that the damages to the equipment occurred during the effective dates of the Chubb policies. This is all that Rule 8(a) requires.

## V. Broker Defendants - Duty of Care

To state a claim for either professional negligence or negligent misrepresentation, Comdisco must allege that the broker defendants owed Comdisco a duty of care. *See Mt. Zion*

13

*State Bank & Trust v. Consol. Communications, Inc.*, 660 N.E.2d 863, 867 (1996). Summit argues that Comdisco cannot state a claim against it for professional negligence or negligent misrepresentation because, as a matter of law, Summit owed no duty to Comdisco. Crist, against whom Comdisco alleges only professional negligence, argues that that claim should be dismissed for the same reason. Because Crist's argument is perfunctory and not supported by any citations to relevant case law, the court will only address Summit's motion.

Summit cites *Pacific Tall Ships Co. v. Kuehne & Nagle, Inc.*, 76 F. Supp. 2d 886 (N.D. Ill. 1999), in support of its argument that it owed no duty of care to Comdisco. In that case, plaintiff hired a shipping company to arrange the shipment of a number of model wooden ships. The shipping company, pursuant to its contract with the plaintiff, utilized its in-house insurance broker to acquire insurance for the plaintiff's cargo. The cargo was damaged during transit, and the plaintiff, subsequent to the denial of its claim by the insurance company, sued the insurance broker, among others, for breach of fiduciary duty and negligence. *Id.* at 888. The court granted the insurance broker's motion for summary judgment, holding that the broker owed no duty of care to the plaintiff. *Id.* at 895-96.

According to Summit, *Pacific Tall Ships* holds that, as a matter of law, an insurance broker has no duty of professional care to a third party with whom it has no contractual relationship. (Reply, at 6.) This is incorrect. The court held, rather, that the plaintiff "has not produced any evidence that it had any sort of relationship" with the broker. *Id.* at 895. The court's holding turned on the evidence in the record, not on the legal sufficiency of the complaint. Indeed, the *Pacific Tall Ships* court had denied the broker's 12(b)(6) motion to dismiss the complaint. *See* Minute Order of Sept. 1, 1998. Because Summit has failed to show

that Comdisco can prove no set of facts in support of its claim that Summit owed Comdisco a duty of care, Summit's motion to dismiss on this ground is denied.

## VI. Broker Defendants - Reasonable Reliance

To state a claim for either negligent misrepresentation or intentional misrepresentation, Comdisco must show that its reliance on the alleged misrepresentations of the broker defendants was reasonable. *Bd. of Educ. of City of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 593 (1989). Summit argues that Comdisco's reliance on the "Evidence of Property Insurance" was not reasonable as a matter of law. The court disagrees.

First, the Evidence of Property Insurance issued by Summit to Comdisco states, "This is evidence that insurance as identified below has been issued, is in force, and conveys all the rights and privileges under the policy." The document does not contain a disclaimer of the type commonly found in certificates of insurance. *See, e.g., American Country Ins. Co. v. Kraemer Bros., Inc.*, 699 N.E.2d 1056, 1059 (Ill. App. 1st Dist. 1998) ("This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below."). If a certificate of insurance does not include a disclaimer, the insured may rely on representations made in the certificate. *Id.* at 1060. Thus, Comdisco's reliance on the Evidence of Property Insurance was reasonable.

Second, the insurance policy itself may contain a blanket endorsement provision granting additional loss payee status to any party required to be named as a loss payee under a written contract. Since Summit failed to attach a complete copy of the underlying eLaw policy to its motion, the court does not know whether the policy contained such a provision. However, the

15

iBeam policy issued by Federal, one of only two policies provided to Comdisco by the Chubb defendants, contains just such a provision. (Compl., Ex. A, providing that "[a]ny person or organization that is required to be named as loss payee under written contract, and such requirement is evidenced by a certificate of insurance on file with the company, is added as a loss payee.") If similar language is included in the eLaw polic, not only was Comdisco's reliance on the Evidence of Insurance issued by Summit reasonable, but it may in fact mean that Comdisco is a loss payee under the eLaw policy, despite not being specifically named in the policy. *See West Amer. Ins. Co. v. J.R. Construction Co.*, 777 N.E.2d 610, 615 (Ill. App. 1st Dist. 2002) (holding that defendant was an additional insured under a policy containing a similar blanket endorsement provision because, among other things, the insurer's agent issued a certificate of insurance identifying defendant as an additional insured). Since Summit has not demonstrated that the eLaw policy did not contain similar language, the court need not consider other arguments that Comdisco's reliance on the Certificate of Insurance was unreasonable. Summit's motion to dismiss on this ground is denied.

## VII. Broker Defendants - Rule 9(b)

ABD, HMK, Accordia, and Summit also argue that Comdisco's claim for intentional misrepresentation should be dismissed for failure to satisfy the pleading standards of Rule 9(b), Fed. R. Civ. P.[5] Rule 9(b) requires a party alleging fraud to "at least plead with sufficient particularity facts establishing the elements of fraud, including what misrepresentations were

---

[5] HMK also moves to dismiss Comdisco's negligent misrepresentation claim against it for failure to satisfy the pleading standards of Rule 9(b). Unlike intentional misrepresentation, however, negligent misrepresentation is not subject to the heightened pleading standard of Rule 9(b). *Scibetta v. Rehtmeyer, Inc.*, 2005 WL 331559, at *4 (N.D. Ill. Feb. 9, 2005); *Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.*, 2004 WL 2359233, at *2 (N.D.Ill. Oct.19, 2004).

made, when they were made, who made the representations and to whom they were made." *Wright* v. *Nissan Motor Corp. U.S.A.*, 1997 WL 106101, at *2 (N.D. Ill. Feb. 10, 1997). The broker defendants argue that Comdisco's intentional misrepresentation claim fails to satisfy this requirement because it fails to allege (1) when the alleged fraudulent communications occurred, (2) who transmitted the information that is alleged to be fraudulent and (3) to whom the information was transmitted. (*See, e.g.*, ABD's Memo. in Supp. of Mot. to Dismiss, at 7.)

Comdisco's Complaint must be read in conjunction with all of the exhibits attached to the Complaint. Fed. R. Civ. P. 10(c). The Complaint makes it clear that the alleged fraud concerns the broker defendants' preparation and issuance of the Certificates of Insurance representing to Comdisco that it had been added as an additional insured and/or loss payee under policies issued by the Chubb defendants. The Certificates of Insurance at issue are attached to Comdisco's Complaint. The Certificate issued by ABD, to take one example, indicates that it was prepared by ABD Insurance and Financial Services, 301 Island Parkway, Suite 100, Belmont, California. It indicates that the certificate holder, Comdisco, is located at 611 N. River Road, Rosemont, Illinois. It bears the signature of an "authorized representative" of ABD and bears the date on which it was prepared. The Certificates issued by the other broker defendants contain similar information. These Certificates do not describe the allegedly fraudulent statements made by the broker defendants; they are the allegedly fraudulent statements and contain all of the information required by Rule 9(b). It is disingenuous for the broker defendants to claim that they cannot discern from the Complaint the specific behavior that Comdisco alleges to be fraudulent. Thus, the motions to dismiss on this ground are denied.

In the alternative, ABD seeks a more definite statement of Comdisco's claims pursuant to Federal Rule of Civil Procedure 12(e). ABD contends that Comdisco should adds statements to its Complaint explaining how each of the alleged losses to insured property occurred at each of the lease sites. As Judge Darrah explained in his opinion rejecting this argument in case number 04 C 3605 and 04 C 3791, the information sought by ABD is readily available through discovery and need not be specifically pled to sufficiently place ABD on notice of the claims brought by Comdisco. Accordingly, ABD's Alternative Motion for a More Definite Statement is denied.

## CONCLUSION

For the reasons stated above, all of defendants' motions to dismiss are denied.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 8, 2005